## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 94-CA-00091-SCT

*ONE (1) CHARTER ARMS, BULLDOG 44 SPECIAL,
SERIAL #794774; ONE (1) 1984 CHEVROLET
CORVETTE, VIN # 1G1AY0786E5126312; AND KEVIN
WILLIAMS*

*v.*

*STATE OF MISSISSIPPI, EX REL., MIKE MOORE,
ATTORNEY GENERAL; THE CITY OF MERIDIAN,
MISSISSIPPI; LAUDERDALE COUNTY,
MISSISSIPPI; AND KING LOAN SERVICES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/93 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOSEPH A. KIERONSKI, JR. |
| | WILLIAM B. JACOB |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JAMES M. HOOD, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 8/27/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/17/98 |

### EN BANC.

### WALLER, JUSTICE, FOR THE COURT:

### SUMMARY

¶1. After Williams pled guilty to possession of cocaine, the State filed a petition for forfeiture of a

1984 Chevrolet Corvette in the Lauderdale County Circuit Court.[1] After reviewing both parties' motions for Summary Judgment and hearing oral arguments, the trial court ordered that the 1984 Chevrolet Corvette be forfeited. Appellant timely appealed to this Court and assigns the following as error:

> **I. WHETHER THE STATE FAILED TO SHOW THAT AS A MATTER OF FACT APPELLANT'S 1984 CHEVROLET CORVETTE FACILITATED THE POSSESSION AND/OR TRANSPORTATION OF CONTROLLED SUBSTANCE THEREBY SUBJECTING THE PROPERTY TO FORFEITURE.**

> **II. WHETHER THE FORFEITURE OF THE 1984 CORVETTE FOR POSSESSION OF A RESIDUE OF A CONTROLLED SUBSTANCE VIOLATES THE EXCESSIVE FINES AND CRUEL AND UNUSUAL PUNISHMENT PROVISIONS OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE III, SECTION 28 OF THE MISSISSIPPI CONSTITUTION.**

### STATEMENT OF THE FACTS

¶2. On September 16, 1992, a crime stopper informant contacted Agent Joel Walters ("Walters"), of the Meridian/Lauderdale County Narcotics Task Force, that a man in a black Corvette, license plate #1EPG875 Lauderdale County, was approached by a known distributor of crack cocaine in an area of town known as the Red Line district. The informant told Walters that a drug transaction had taken place between the known distributor and the man in the black Corvette. A check of the license plate showed that the Corvette was owned by the claimant here, Kevin Williams.

¶3. An officer was dispatched to the Red Line district where the sale was said to have occurred. Officers radioed to Walters, who was in his office, that they were unable to locate the Corvette. As Walters hung up the phone, he saw, from his office window, the black Corvette backed into a parking space at the Jimmie Rogers Museum and Train Station. Walters and Theall, who was also an officer in the Narcotics Task Force, proceeded in separate vehicles to where the Corvette was parked.

¶4. Walters and Theall pulled up on both sides of Williams' Corvette. As the officers approached, they noticed Williams place something in his mouth. Walters reached into the vehicle and grabbed Williams' right hand and arm. Theall grabbed Williams by the throat in an effort to prevent him from swallowing. After it became apparent that Williams was not going to spit out whatever he had in his mouth, the officers released their holds and instructed him to get out of the car. While handcuffing Williams, Theall found a crack pipe in his hand.

¶5. Theall then swabbed the inside of Williams' mouth with a latex glove to obtain any residue of the substance that he tried to swallow. Both the latex glove and the crack pipe were sent to the Mississippi Crime Lab and later tested positive for the presence of cocaine. Williams was placed under arrest for possession of cocaine, interfering with a police investigation and resisting arrest.

¶6. Walters searched Williams' vehicle and found a Charter Arms .44 Special handgun, a piece of copper tubing commonly used to smoke crack cocaine, and a foil container of matches commonly used by crack smokers to cause the evaporation of crack cocaine vapors. The tubing and foil container later tested positive for cocaine. Williams pled guilty to possession of cocaine and he was

ordered to pay a $2,500 fine, $100 in restitution, and court costs in the amount of $164.50. The court withheld adjudicating Williams guilty for a period of three years pursuant to § 41-29-150(d).

¶7. Subsequently, the State filed a petition for forfeiture seeking to seize the Corvette and the gun. Williams filed his answer to the petition. King Loan Services, lien holder on the Corvette, also filed an answer asserting its lien interest in the vehicle.[(2)]

¶8. On June 29, 1993, the State filed a motion for summary judgment requesting that the gun and the Corvette be forfeited. Williams filed a cross-motion for summary judgment alleging that forfeiture of his vehicle would result in a violation of the Excessive Fines Clause of the Eighth Amendment. After a summary judgment hearing, the court granted the State's motion for summary judgment finding that the Corvette was subject to forfeiture because: (1) Williams purchased a rock of cocaine while driving the vehicle in dispute; (2) he drove the vehicle to the park for the purpose of smoking the cocaine; and, (3) he admitted that his vehicle contained one rock of crack cocaine at the time of his arrest. Williams appealed the lower court's decision to this Court.

## STANDARD OF REVIEW

¶9. This Court recently set forth the standard of review for summary judgment in *Aetna Casualty & Surety Co. v. Berry*, 669 So.2d 56 (Miss. 1996). In *Berry*, this Court stated;

> The standard for reviewing the granting or denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts *de novo* review of orders granting or denying summary judgment and looks at all the evidentiary matters before it- -admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against the party whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*Berry,* 669 So.2d at 70 (*quoting Mantachie Natural Gas v. Mississippi Valley Gas Co.*, 594 So.2d 1170, 1172 (Miss. 1992)); *Caldwell v. Alfa Ins. Co.*, 686 So.2d 1092, 1095 (Miss. 1996).

¶10. Moreover, a motion for summary judgment should be denied unless the trial court finds beyond any reasonable doubt that the plaintiff would be unable to prove any facts to support his/her claim. *Yowell v. James Harkins Builder, Inc.*, 645 So.2d 1340, 1343 (Miss. 1994). The trial court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. *Id*. at 1343-44.

## DISCUSSION OF THE LAW

¶11. Williams advances two arguments in support of his position that the Corvette was not subject to forfeiture. First, in essence, Williams asserts that the Corvette was not sufficiently "instrumental" in his obtaining possession of, and transporting, the crack cocaine. Second, he submits that even if the

Corvette was instrumental, its forfeiture is in violation of the Excessive Fines Clause of the Eighth Amendment. Under Mississippi law, forfeitures are possible where a vehicle has been "... used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of [controlled substances]." Miss. Code Ann. § 41-29-153(a)(4) (1993). Other courts, including the United States Supreme Court, have considered this issue and a review of their analyses proves beneficial today.

¶12. The United States Supreme Court addressed the issue in *Austin v. United States*, 509 U.S. 602 (1993). In *Austin*, the defendant, upon his guilty plea, was sentenced to prison for possession of cocaine with intent to distribute. Subsequently, the United States filed an *in rem* action in Federal District Court against his mobile home and auto body shop under the federal statutes which provide for the forfeiture of vehicles and real property used or intended to be used to facilitate the commission of certain drug-related crimes.[3] *Id*. at 604-05. The United States Supreme Court held that forfeiture under the federal statutes was monetary punishment and thus subject to the Excessive Fines Clause. The Supreme Court ruled that these sections were punitive in nature, even though they may also serve remedial purposes, because Congress provided for an "innocent-owner defense" within the statutes in addition to requiring that forfeiture be directly tied to the commission of drug offenses. *Id*. at 619-20. The Supreme Court concluded that forfeiture under these federal statutes constituted payment for punishment for some offense and was, therefore, subject to the limitations of the Excessive Fines Clause. *Id*. at 622. The Supreme Court stopped short of indicating exactly what was excessive and remanded the case to the Court of Appeals for such a determination. *Id*.

¶13. The United States Supreme Court has not yet prescribed a test for determining whether a forfeiture is an excessive fine. The United States Supreme Court has never held that the Excessive Fines Clause of the Eighth Amendment is applicable to the states. *See Pervear v. Commonwealth*, 72 U.S. 475 (1866); *Knapp v. Schweitzer*, 357 U.S. 371 (1958). The Mississippi Constitution has its own excessive fines clause, which is identical to the Excessive Fines Clause of the United States Constitution. Miss. Const. art. 3, § 28 (1890). This Court can look to the United States Supreme Court for guidance or we can develop our own application under Miss. Const. art 3, § 28. Other courts have primarily employed two tests when determining whether a forfeiture is excessive.

¶14. The Fourth Circuit, in *United States v. Chandler*, 36 F.3d 358 (4th Cir. 1994), has adopted the "instrumentality test," which requires an analysis of the following three factors, when determining whether forfeiture is excessive:

> (1) the nexus between the offense and the property and the extent of the property's role in the offense,
>
> (2) the role and culpability of the owner, and
>
> (3) the possibility of separating the offending property from the remainder.

*Id*. at 365. This test focuses on how closely the property is tied to the crime and whether the property was instrumental to the crime committed. If the above three requirements are met, the forfeiture is considered constitutional. Since the Supreme Court's *Austin* decision, a number of other courts of appeals have applied the Excessive Fines Clause in the forfeiture context. Only the *Chandler* court has adopted Justice Scalia's "instrumentality" approach as the sole inquiry.[4]

¶15. At the other end of the spectrum, one circuit has concluded that "the appropriate inquiry with respect to the Excessive Fines Clause is, and is only, a proportionality test" that compares the value of the property forfeited with the severity of the crime committed. ***United States v. One Parcel Property Located at 427 & 429 Hall Street***, 74 F.3d 1165, 1170 (11th Cir.1996) (rejecting ***Chandler*** court's analysis and instrumentality test). Several courts of appeals, meanwhile, have adopted tests that combine instrumentality and proportionality inquiries. *See****United States v. Premises Known as 6040 Wentworth Avenue South, Minneapolis, Hennepin County, Minnesota***, 123 F.3d 685, 688-89 (8th Cir.1997) (applying "gross disproportionality" analysis including both proportionality and instrumentality factors); ***United States v. One Parcel Property***, 106 F.3d 336, 338 (10th Cir.1997) (applying instrumentality test first, then proportionality test); ***United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road,*** 59 F.3d 974, 983 (9th Cir.1995) (adopting "proportionality test as a check on the instrumentality approach"); ***United States v. Milbrand***, 58 F.3d 841, 847-48 (2d Cir.1995) (applying multi-factor analysis including both proportionality and instrumentality factors) *cert. denied*, 516 U.S. 1182 (1996); ***United States v. Premises Known as RR # 1, Box 224, Dalton***, 14 F.3d 864, 876 (3d Cir.1994) (remanding with instructions to apply instrumentality test first, then examine proportionality). The Sixth Circuit has addressed the question but declined to adopt an approach, *see* ***United States v. Certain Real Property Located at 11869 Westshore Drive***, 70 F.3d 923, 930 (6th Cir.1995), *cert. denied*, 117 S.Ct. 57, (1996) while the First, Fifth, and District of Columbia Circuits apparently have yet to consider the issue.

¶16. As a court, we can not view forfeiture cases in a vacuum. The test employed must be one that permits forfeiture of property from those persons who utilize said property in furtherance of their own criminal activity. Yet, the test must also be flexible so as not to permit forfeiture where innocent persons will suffer or where the value of the property is grossly disproportionate to the crime.

¶17. Given that the weight of authority among the courts of appeals strongly favors the use of both instrumentality and proportionality review in this context, we decline to employ solely the instrumentality test. One can easily imagine cases in which the freestanding instrumentality approach could lead to results that are "excessive fines" under the circumstances.

¶18. A proportionality analysis is especially appropriate in the civil forfeiture context because it is the sovereign that profits from such forfeitures. *See* ***6380 Little Canyon Road,*** 59 F.3d at 983 (adopting "proportionality test as a check on the instrumentality approach"). Justice Scalia recognized this when he stated:

> There is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence. Imprisonment, corporal punishment and even capital punishment cost a State money; [whereas] fines are a source of revenue... [I]t makes sense to scrutinize governmental action more closely when the State stands to benefit.

***Harmelin v. Michigan***, 501 U.S. 957, 979 n.9 (1991) (Scalia, J., plurality opinion). All property, such as that which is at issue here, that is forfeited to Mississippi law enforcement agencies is either liquidated, in which case the arresting agency is entitled to a portion of the proceeds, or kept by the arresting law enforcement agency for its own use and benefit. Miss. Code Ann. 41-29-181 (Supp.

1997). This incentive enhances the need for close scrutiny of *in rem*forfeitures. For this reason, the judiciary should be alert to detect constitutionally proscribed injustices imposed on individual wrongdoers. *6380 Little Canyon Road,* 59 F.3d at 984-85.

¶19. This Court recognizes the factually intensive nature of forfeiture cases and we elect to apply a test that combines the three prongs of the "instrumentality" test with a "proportionality" review. The elements of the test that we elect to employ are as follows:

> (1) The nexus between the offense and the property and the extent of the property's role in the offense;
>
> (2) The role and culpability of the owner;
>
> (3) The possibility of separating the offending property from the remainder; and
>
> (4) Whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

¶20. The above test combines the elements of the instrumentality test with a weighing of proportionality on the individual circumstances of each case to determine whether the forfeiture is excessive. It avoids the harsh and unjust results that can be, and will be, produced by the implementation of a "bright-line" instrumentality test. At the same time, it allows the lower courts, and this Court on review, to consider all relevant factors under a framework that is simple, yet complete.

¶21. As outlined in this opinion, the vast majority of federal courts have also elected to temper the instrumentality with a proportionality review. In fact, the Fourth Circuit appears to be the only circuit that strictly follows solely an instrumentality test. *See United States v. Chandler*, 36 F.3d 358 (4th Cir. 1994).

¶22. The analysis under the proportionality test that we employ here is two-part. First, under the "instrumentality" (or "nexus") test, the forfeited property must have a sufficiently close relationship to the illegal activity. Second, under the "proportionality" test, forfeiture of the property must not impose upon the owner a penalty grossly disproportionate to his offense.

¶23. With these enunciated principles in mind, we proceed to determine whether the forfeiture of the Corvette was proper under the test which we have set forth above.

¶24. Williams asserts that the State failed to prove that the Corvette was used to facilitate the possession or transportation of the crack cocaine. His main point is that the crack cocaine was found in his mouth rather than somewhere inside his vehicle. He relies heavily on *People v. One 1986 White Mazda Pickup Truck*, 621 N.E.2d 250, (Ill.App.Ct. 1993). In *People*, the claimant had been stopped and searched by the police. During the course of their search of the claimant, the police found a clear plastic straw in his right coat pocket and a plastic bag containing cocaine in his underwear. There was no evidence indicating that the pickup truck had been used to purchase, conceal, or sell the drugs. The court found that "the controlled substance was already secreted on his person, and the use of the vehicle did not in any manner 'facilitate' this violation of the Act." *Id*. at

254.

¶25. Williams' reliance on *People* is misplaced. Here, there is no doubt that the Corvette was used to transport Williams into a known drug area to purchase cocaine, afforded him quick egress from the area, and allowed him a measure of privacy in which to consume his ill-gotten drugs. In *People*, there was no evidence indicating that the claimant had used the truck to facilitate the commission of his crime. Furthermore, in the case *sub judice*, the agents found some drug paraphernalia concealed inside Williams' car, and not just on his person.

¶26. The above facts suggest that forfeiture is proper under a strict instrumentality test. However, to be complete the test must include an analysis of whether the forfeiture is excessive. This analysis consists of applying the fourth factor of our above enunciated test to the facts of the case.

¶27. It is undisputed that Williams had only one rock of cocaine in his possession at the time of his arrest. Furthermore, the cocaine was not hidden or concealed in the car, it was on his person. Williams, with no prior felony convictions regarding controlled substances, paid a $2,500 fine for possession of cocaine and was placed on probation for a period of three years. *See* Miss. Code Ann. § 41-29-150(d)(1) (1993). Considering these additional facts under the fourth prong of the test set forth above, the conclusion is that the forfeiture of the Corvette is grossly disproportionate to the crime.

¶28. Justice Smith has written in his dissent that our test "is unnecessary and invades the prerogative of and the intent of the Mississippi Legislature," the result of which "effectively removes the teeth from the statute." Statutes are not applied in a vacuum, and must pass scrutiny under the Constitution. While the minority is correct in noting that "application of the instrumentality test alone mandates forfeiture," this approach discards Mississippi's Excessive Fines Clause. Miss. Const. art 3, § 28.

¶29. The test that we have set forth today gives effect to the legislative intent while, at the same time, recognizes the safeguards of both the United States Constitution and the Mississippi Constitution. The instrumentality test requires forfeiture of the property without consideration of the Excessive Fines Clause. While we agree that the legislature intended a "harsh result," such consequences must comply with constitutional requirements. The instrumentality approach violates both the Federal Constitution and our State Constitution on its face.

¶30. The instrumentality test proposed by Justice Smith relies exclusively on Justice Scalia's concurring opinion in *Austin* and on the rationale of *United States v. Chandler*. It should be noted that no other justice joined Justice Scalia's opinion in *Austin*, and the Fourth Circuit Court of Appeals is the only Federal Circuit that applies solely the instrumentality test in forfeiture proceedings. Justice Scalia recognized a need for heightened scrutiny in forfeiture cases, which is omitted in the analysis of Justice Smith. *See* **6380 Little Canyon Road,** 59 F.3d at 984. Even the **Chandler** court, recognizing the need to evaluate the totality of the circumstances, adopted additional factors that may be considered under the instrumentality review which tempered or "took the edge off" strict interpretation, which are absent in the dissent of my esteemed colleague. **Chandler**, 36 F.3d at 365.

## CONCLUSION

¶31. The test that we have elected to employ in this action combines the elements of the instrumentality test with a proportionality review. While forfeiture would be proper solely under an instrumentality test, we hold that forfeiture of the Corvette is excessive under the proportionality review of the fourth prong of the test which we have set out above. The order of the trial court granting the State's motion for summary judgment and ordering forfeiture is reversed and rendered.

¶32. **REVERSED AND RENDERED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ.**

**BANKS, JUSTICE, CONCURRING:**

¶33. I concur in the result reached by the majority. I write separately because I would reach that result as well by the application of the instrumentality test.

¶34. I disagree with the majority conclusion that the mere fact that Williams drove his car to an area to purchase cocaine and that the automobile would provide swifter egress than perhaps a bicycle or walking is a sufficient nexus between the crime, possession of cocaine, and the property. The test to find property guilty such that it can be forfeited consistent with the Excessive Fines Clause requires that the property play a substantial and meaningful role in the commission of the crime. *United States v. Chandler*, 36 F.3d 358, 364 (4th Cir. 1994); *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, El Dorado, California*, 59 F.3d 974, 985 (9th Cir. 1995); *United States v. Real Property Located at 25445 via Dona Christa, Valencia, California*, 138 F.3d 403, 408 (9th Cir. 1998). That is simply not the case here.

¶35. To begin we should establish an analytical framework for considering the strength of the prong of the test that the majority enunciates regarding the sufficiency of the nexus between the property and the crime. The United States Court of Appeals for the Fourth Circuit suggested one which I find appropriate.

> [i]n measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense. No one factor is dispositive but, to sustain a forfeiture against an Eighth Amendment challenge, the court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offensive conduct been carried out as

intended.

*United States v. Chandler*, 36 F.3d 358, 365 (4th Cir. 1994).

¶36. First, in applying the factors enumerated above, we note that there is no evidence which suggests that the illegal use of the property was other than an isolated event or that the Corvette was purchased or especially maintained to carry out the purchase and use of illegal drugs.

¶37. The difficult factors here are whether the use of the Corvette was deliberate and planned and whether it was important or necessary to Williams' purchase and possession of one rock of crack cocaine. Although the police officers found a piece of copper tubing and some matches in the car, each of which are supposed to be commonly used by crack users to smoke the drug and evaporate the vapors, there is no other evidence of the Corvette's role in the commission of the crime. The fact that the Corvette was used to transport Williams to the site of the purchase, and remove him along with his newly-purchased crack does not prove, or even suggest, that Williams deliberately chose the Corvette to engage in these activities for any particular advantages that the automobile could confer.

¶38. Even if Williams did deliberately choose to transport the crack in his Corvette for some added dimension of privacy, the evidence indicates no importance or necessity of the Corvette. In other words, there is no evidence that the Corvette was important in some way that another mode of transport, like Williams' shirt pocket and his two feet (had he purchased the crack on foot), would not have been. *Compare **United States v. Chandler***, 36 F.3d 358 (4th Cir. 1994)(finding that use of a 33-acre farm in extensive drug transactions had been important to the illegal activity where farm was secluded off of a private road and owner had installed a security camera on the private driveway in order to utilize the property's seclusion in carrying out drug transactions, and farm's caretakers were paid in drugs) *with **United States v. One 1990 Ford Ranger Truck, VIN No. 1FTCR10TALUCO8885***, 888 F.Supp. 1170, 1176 (N.D. Ga. 1995) (holding that truck in which owner and passenger had transported illegal drugs and in which they were preparing to ingest was not sufficiently instrumental to the illegal activity to pass constitutional muster, citing ***United States v. Real Property Located at 6625 Zumirez Drive***, 845 F.Supp. 725, 737 (C.D. Cal. 1994) ("[F]or the property to be the site of the illegal activity, without more, does not render the property an integral part of the activity.")).

¶39. In my view, the Corvette was not sufficiently instrumental in the commission of Williams' crime to be constitutionally forfeited.

### McRAE, JUSTICE, DISSENTING:[(5)]

¶40. While I commend the Majority for properly reversing the forfeiture, I cannot join their opinion. Indeed, while people are continuously admonished not to leave a poor first impression, the Majority evidently refuses such advice in this case of first impression as it crafts a rule that foreshadows development of bad forfeitures law. The Majority basically couches this as an "excessive fines" case under the Eighth Amendment of the United States Constitution and Article 3, Section 28 of the Mississippi Constitution. Yet, this case involves much more. The Majority fails to discuss both double jeopardy and any related or alternative civil law questions. Further, if the State is allowed to seek forfeiture, the defendant should be put on notice at the criminal hearing so that he will be fully

apprized of the situation before he pleads, since the guilty plea could be used in the "civil case."

¶41. The issue of excessive fines in a forfeiture context is one of first impression. The Majority correctly acknowledges that the federal Excessive Fines Clause has not been incorporated to the states via the Fourteenth Amendment. *Pervear v. Massachusetts*, 72 U.S. 475, 479-80 (1866). The Majority subsequently states that it "can look to the United States Supreme Court for guidance or . . . develop [its] own application under Miss. Const. art. 3 § 28." The Majority then indeed looks to the federal courts "for guidance" in developing a test. In reality, the Majority chooses to set aside our Mississippi Constitution. Then, to add insult to injury, they adopt a federal test and call it a proportionality test, when the test actually is a multi-factor or hybrid test. One can only wonder what is the Majority's goal. Regardless, confusion is what the Majority creates.

¶42. All of this confusion could have been avoided were the Majority simply to utilize the double jeopardy provision of Miss. Const. art. 3, § 22. Yet, they ignore the issue of double jeopardy. Apparently, they equate property to the status of a natural person. I ponder to no avail how property--an automobile--commits a crime.

¶43. Property is not a natural person. Property is not a criminal. It cannot be imprisoned. Yet, the Majority treats the issue as one of the State's wishing to lock away property. If the issue is forfeiture of the property, then the party affected is the owner. The property is torn from the possession of the owner. Yet, the Majority uses an excessive fines analysis rather than a double jeopardy punishment test to reverse the forfeiture. The logic of this escapes me. Excessive fines are inherently punitive. So, if a natural person can be excessively fined by being torn of his property, why is that natural person not punished twice?

¶44. Mississippi's forfeiture law does not track that of the federal government. While federal case law mandates such treatment of property, *see United States v. Ursery*, 518 U.S. 267 (1996), Mississippi's double jeopardy law does not. The federal system is fine, but we must analyze Mississippi issues under our Mississippi jurisprudence. In *Saik v. State ex rel. Mississippi Bureau of Narcotics*, 473 So. 2d 188, 191 (Miss. 1985), this Court stated that "[f]orfeiture statutes are penal in nature . . . ." *See id., quoted in Jackson v. State ex rel. Mississippi Bureau of Narcotics*, 591 So. 2d 820, 823 (Miss. 1991). In the instant case, Williams has previously pled guilty to possession of cocaine; he is now in court a second time--double jeopardy--to determine whether his guilt warrants loss of additional liberty, i.e., the ability to possess his own property.

¶45. Despite treating the property as if it is a criminal and, thus, warranting double jeopardy analysis, the Majority purports to be working in the area of civil law. Well, if the Court prefers to treat this as a civil issue, then the Court must abide by that area of law. If the State seizes, more aptly plunders, a defendant's property, that defendant should be allowed to automatically file suit to reclaim that property under Mississippi statute. Indeed, this Court has found the forfeitures provided for in Miss. Code Ann. § 41-29-176 to -181 (1993) to be civil in nature. *See State v. Fleming,* No. 96-KA-00272-SCT, 1998 WL 304544, at *3 (Miss. June 11, 1998) (citing *State ex rel. Mississippi Bureau of Narcotics v. Lincoln County*, 605 So. 2d 802, 804 (Miss. 1992)). Thus, the defendant should have leave to seek replevin under Miss. Code Ann. § 11-37-101 to -157 (Supp. 1998), or request claim and deliver under Miss. Code Ann. § 11-38-1 to -9 (Supp. 1998), or sue the State under Miss. Code Ann. § 11-45-1 (1972). Such a lawsuit should be subject to the constitutional right of a jury

trial in which there must be a 9 to 3 jury verdict. *See* Miss. Const. art. 3, § 31; Miss. Code Ann. § 13-5-93 (1972); *and* Miss. R. Civ. P. 38, 48(a). The defendant should also have full access to discovery tools, such as depositions and interrogatories, so the defendant may properly tender a case. *See* Miss. R. Civ. P. 26-37. Hence, a defendant whose property has been seized by the State should have the same rights due plaintiffs in all civil cases.

¶46. For the aforementioned reasons, we should avoid the creation of bad judge-made law. We should follow the mandates of our Mississippi Constitution. We should not arbitrarily create inaccurate law. Accordingly, I dissent.


### SMITH, JUSTICE, DISSENTING:

¶47. The majority's hybrid instrumentality - proportionality test is unnecessary and invades the prerogative of and the intent of the Mississippi Legislature in passing Miss. Code Ann. § 41-29-153 (a)(4). This effectively removes the teeth from the statute which attempts to "take a bite out of crime" by making drug dealers and users think twice about using their personal or real property for drug transactions. Under the statute, the vehicle was properly forfeited. Application of the instrumentality test alone mandates forfeiture. There is no need for the majority's proportionality analysis. The majority expresses concerns with the "harsh result" of the forfeiture, but that is exactly what the Legislature, in its wisdom, intended to occur to drug users and dealers. The majority also expresses concern that forfeiture not be permitted when innocent persons will suffer. I agree, but the facts here could never suggest that Williams is an innocent person. I respectfully disagree and therefore dissent.

¶48. I would adopt only the "instrumentality test,"first espoused by Justice Scalia in *Austin v. United States*, 509 U.S. 602 (1993), and subsequently utilized in *United States v. Chandler*, 36 F. 3d 358 (4th Cir. 1994), *cert. denied*, __U.S. ___, 514 U.S. 1082 (1995), where the Supreme Court held that forfeiture was not a violation of the Eighth Amendment Excessive Fines Clause due to the close relationship between the illegal drug trafficking and the property at issue. Forfeiture is an *in rem* action. Under the test, if the forfeited property meets the test of instrumentality, it is never excessive.

¶49. Applying the three factor test utilized in *Chandler*, which was clearly used by the trial court in the case *sub judice*, the Corvette in question was forfeitable under Mississippi law. The trial court found that there was "no question but that the 1984 Chevrolet Corvette violated Section 41-29-153(a)(4), applying the 'guilt' of the property factor in *Austin*." Additionally, Judge Bailey considered the amount, type and penalty for possession of the controlled substance to which Williams pled guilty. And having considered all these factors, the learned trial judge found the vehicle to be instrumental and thus should be forfeited.

¶50. The nexus and role of the Corvette in securing cocaine is readily apparent. The record reveals that Williams obviously did not live in the immediate area, thus a leisurely walk about the neighborhood by Williams to secure drugs was not only suspect, but extremely unlikely. There is no question but that the area where Williams purchased the cocaine was commonly known as a high crime drug infested neighborhood. Additionally, the majority ignores the fact that Williams had a Bulldog .44 magnum pistol,[6] also seized and forfeited, strapped in a velcro holster on the Corvette's drivers door. This factor alone suggests that Williams believed that he needed to be prepared for the

usual type hostile encounters often confronting someone when entering drug dealing territories. In addition, the agents found drug paraphernalia concealed in the Corvette. The innocent person theory could never apply to Williams, who apparently was well versed and street wise in securing drugs and being prepared for any trouble encountered. The Corvette afforded Williams privacy, as well as a quick entrance into and exit therefrom an apparent high crime neighborhood. It is much easier to avoid apprehension or trouble, or for that matter law enforcement, in a buy/sale arrangement gone sour, if the purchaser/seller is only present at the scene for a matter of seconds. And a quick exit is exactly what Williams attempted when the drug agents appeared on the scene.

¶51. The majority expresses concern that the cocaine was in Williams' mouth, not in the Corvette, when he was finally apprehended. This is straining at a gnat, but swallowing a camel. Williams, in a desperate attempt to avoid being caught by law enforcement officers with cocaine in his possession which was being transported in his Corvette attempted to swallow the cocaine when the drug agents appeared. There is nothing unusual about this scenario. Drug sellers and purchasers very frequently utilize this tactic to avoid apprehension by officers. If given sufficient time and the circumstances permit, very frequently the drugs are simply tossed out the window of moving vehicles, tossed aside by persons walking, or flushed if a restroom happens to be handy at the particular moment. The real point of contention here is that the cocaine was in Williams' possession in the Corvette and being transported somewhere. It is irrelevant whether it was lying on the seat of the Corvette, hidden in the vehicle, or in Williams' mouth. The possession and use of cocaine by Williams was absolutely made easier because of the use of the Corvette.

¶52. *People v. One 1986 White Mazda Pickup Truck, VIN JM2UF1118G0577930*, 251 Ill. App. 3d 79, 621 N.E. 2d 250, 190 Ill. Dec. 381 (Ill. App. Ct.1993) is of no value to Williams. In *People*, there was no evidence indicating that the vehicle had been used for the purpose of purchasing drugs. *Id.* at 254. In stark contrast to *People*, in the case at bar, Williams clearly used the vehicle in the purchase of the drugs and drug paraphernalia was found concealed in the Corvette. The Corvette thus clearly met the instrumentality test, and that is all that is required for forfeiture of the vehicle.

¶53. Williams' admission of guilt to possession of crack cocaine is all that is necessary under the Mississippi statute for proper forfeiture of the Corvette which was unquestionably used to purchase the drug. Williams is estopped to deny that the vehicle was forfeitable. *See Jordan v. McKenna*, 573 So. 2d 1371 (Miss. 1990). Judge Bailey could have granted the State's summary judgment on Williams' admission alone, because the statute is clear that possession alone is sufficient to support the forfeiture of a vehicle.

¶54. Williams argues that mere possession is insufficient, but that trafficking and transportation of the illegal drugs is also required. Williams' argument is erroneous. Trafficking of drugs is not required by the Mississippi statute. Williams' situation is not bolstered because there was no proof offered that Williams was a drug dealer. The majority appears sympathetic with Williams' contention that there was "only one rock of cocaine," and that Williams has been subjected to "harsh, unjust results, grossly disproportionate to the crime he committed." I would submit that Williams received mercy from the trial court. This factor was obviously weighed and considered by the trial judge. Williams received probation rather than a sentence to the penitentiary. This Court has upheld the forfeiture of a vehicle in which possession of only two rocks of crack cocaine were found, and additionally, the Court announced that "there was no evidence that [the defendant] was a drug dealer." *Neely v. State*

*ex rel. Tate County*, 628 So. 2d 1376, 1381 (Miss. 1993) (Banks, J.).

¶55. The majority's attempt to require more than the statute provides is nothing but an invasion of a prerogative of the Mississippi Legislature. The majority is simply writing the law to effectively prevent future forfeitures in most drug cases. A similar attempt in Florida has been referred to as "judicial joggling." In *Griffis v. State*, 356 So. 2d 297 (Fla. 1978), the Florida legislature abrogated the Florida Court's attempt to dissipate the enforcement of the statute by adding mandatory forfeiture language to the statute for felony possession. The Florida Court, in spite of the fact that "a literal reading of the language contained in Section 943.42, Florida Statutes (1975), would support the trial court's finding that the statute does not require that a vehicle be used in an illegal drug '"operation,"'" stated that "this literal reading must give way to the legislative intent in enacting the statute which is plainly to the contrary." *Id.* at 299. The Florida Court ultimately held that "it was not the legislative intent in enacting Ch. 73-331, § 12, Laws of Florida, to authorize vehicle forfeiture as an instrument to punish citizens for mere possession of controlled substances in a vehicle." *Id.* at 301. In response, the Florida Legislature in 1980 made clear to the Florida Court that the legislative intent was exactly what the statute had stated, thus it amended the statute to make clear the legislative intent to be that possession of felony drugs was sufficient to allow forfeiture of a vehicle. The Florida District Appeals Court, upholding the amendment to the statute, wrote that "[i]ts evident that the legislature has abrogated *Griffis* and the statute now requires forfeiture in cases where possession of contraband constitutes a felony." The Appeals Court in reference to legislative intent further stated, "[i]t is within their province to have so decided." *Department of Highway Safety & Motor Vehicles v. Pollack*, 462 So. 2d 1199, 1201 (Fla. Dist. Ct. App.1985). In the case *sub judice* this Court should restrain itself. The majority's required modified proportionality test and constitutional analysis is simply writing new law to circumvent our statute which on its very face is crystal clear, i.e., vehicles transporting cocaine may be forfeited. I suspect that the majority's new law, or "judicial joggling" will cause the Mississippi Legislature to promptly revisit this § 41-29-153 (a)(4).

¶56. Applying the rationale of *Austin and Chandler*, the sole measure of the forfeiture's excessiveness should only be the relationship between the forfeited property and the offense involved. The only factor then is the nexus between the property and the illegal act, i.e., was it instrumental in the illegal act? The answer here is yes. Regardless, this record reflects that Judge Bailey went much further and considered the nexus between the Corvette and Williams' illegal conduct; the value of the Corvette; the culpability of Williams; the seriousness of the offense; the amount and type of drug involved; the severity of the crime; and the fine and sentence.

¶57. There is no reason whatsoever to reverse and render this case. The learned trial judge addressed each issue properly, and I might add, he did so with great caution. I would affirm the trial court.

¶58. I respectfully dissent.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. The parties stipulated to the forfeiture of the Charter Arms, Bulldog 44 Special handgun.

2. King Loan's only interest in this matter is that its security interest be left intact.

3. The recent decision of the United State Supreme Court in ***United States v. Bajakajian***, 1998 WL 323512 (1998) treats a different kind of forfeiture than *in rem.* The forfeiture there was part of the criminal sentence.

4. The sole instrumentality test advocated by Justice Scalia in his concurring opinion in ***Austin*** was not joined by any of the other justices.

5. This opinion is written to express this writer's vote since he agrees with the majority to reverse the trial court, but for other reasons.

6. Williams did not contest the forfeiture of the pistol.