# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00521-SCT

*ONE (1) 1979 FORD 15V, VIN #E14HBEE7506; SIX THOUSAND SIXTY-ONE DOLLARS AND 11/100 ($6,061.11) IN CHECKING ACCOUNT NUMBER 305-0155-1, PEOPLES BANK OF THE DELTA, INDIANOLA, MISSISSIPPI, OR ITS CURRENT BALANCE, WHICHEVER IS MORE; AND ONE THOUSAND TWO HUNDRED ELEVEN DOLLARS AND 40/100 ($1,211.40) IN SAVINGS ACCOUNT NUMBER 9-200-32, PEOPLES BANK OF THE DELTA, INDIANOLA, MISSISSIPPI, OR ITS CURRENT BALANCE, WHICHEVER IS MORE*

*v.*

*STATE OF MISSISSIPPI, EX REL., MISSISSIPPI BUREAU OF NARCOTICS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/94 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | AZKI SHAH |
| | EARNEST CONROD, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  LISA LYNN BLOUNT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 8/27/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/17/98 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## SUMMARY

¶1. The Mississippi Bureau of Narcotics filed a Petition for Forfeiture pursuant to Miss. Code Ann. §

41-29-177 (1972, as amended), in the Circuit Court of Leflore County seeking the forfeiture of narrow items of property, of which a 1979 Ford van and two bank accounts are at issue in this appeal.[1] The petition alleged that the vehicle had been used to facilitate drug trafficking and that the money was traceable to drug activity.

¶2. Earnest Conrod ("Conrod"), the Appellant in this action, moved the trial court to have the forfeiture action dismissed on the grounds that it violated the Excessive Fines Clause of the Eighth Amendment of the United States Constitution and had not been timely tried. The trial court denied the Motion to Dismiss. Conrod appealed to this Court assigning the following issues.

### I. DID THE FORFEITURE OF CONROD'S PROPERTY VIOLATE CONSTITUTIONAL RIGHTS?

### A. Is the forfeiture at issue excessive in that it violates the Excessive Fines Clause of the Eighth Amendment?

### B. Does this forfeiture violate the Double Jeopardy Clause of the Fifth Amendment?

### II. DID THE TRIAL COURT ERR BY QUESTIONING THE WITNESS?

### III. DID THE TRIAL COURT ERR BY ALLOWING THE STATE TO RECALL AGENT ANDERSON AS A REBUTTAL WITNESS WHEN THE RULE HAD BEEN INVOKED?

## STATEMENT OF THE FACTS

¶3. On February 7, 1990, narcotics agents negotiated a drug deal with Earnest Conrod. On the night of the negotiation, Conrod was driving a 1979 Ford van. The day of the purchase, which was the next day, Conrod arrived in a Corvette accompanied by others in a Maxima. Conrod was arrested at this time and approximately $90,000 was seized. Conrod eventually pled guilty in Federal Court to conspiracy to sell.

¶4. The Mississippi Bureau of Narcotics ("Bureau") filed its Petition for Forfeiture. At the hearing on this petition, Agent Anderson, who was involved in the investigation of Conrod, testified that Conrod owned a vast amount of property and jointly held several bank accounts with other individuals at the time of his arrest. Agent Anderson testified that the payments on the real estate were made in cash money. She also testified that Conrod had been loaned money from the bank to purchase some properties.

¶5. Agent Anderson's investigation also revealed that Conrod ostensibly derived his income from a small grocery store he owned in Sunflower, Mississippi. She testified that the money confiscated from Conrod at the time of his arrest, the money he had in the bank accounts either jointly or individually, and the payments on his notes did not match up with his income. Anderson testified that Conrod stated on the night of his arrest that the grocery store was not doing all that great. Conrod claimed that he borrowed the money he had in his possession on the night of his arrest from friends. Anderson did not point to any drug sale that would have accounted for the money in Conrod's possession.

## DISCUSSION OF THE LAW

### I. DID THE FORFEITURE OF CONROD'S PROPERTY VIOLATE CONSTITUTIONAL RIGHTS?

#### A. Is the forfeiture at issue excessive in that it violates the Excessive Fines Clause of the Eighth Amendment?

¶6. Conrod argues that the forfeiture of his property, a 1979 Ford van and two bank accounts, violates the Excessive Fines Clause of the Eighth Amendment and cites *Austin v. United States*, 509 U.S. 602 (1993) in support of his position. In *Austin*, the defendant, upon his guilty plea, was sentenced to prison for possession of cocaine with intent to distribute. Subsequently, the United States filed an *in rem* action in Federal District Court against his mobile home and auto body shop under the federal statutes which provide for the forfeiture of vehicles and real property used or intended to be used to facilitate the commission of certain drug-related crimes. *Id*. at 604-05. The United States Supreme Court held that forfeiture under the federal statutes was monetary punishment and thus subject to the Excessive Fines Clause. The Supreme Court ruled that these sections were punitive in nature, even though they may also serve remedial purposes, because Congress provided for an "innocent-owner defense" within the statutes in addition to requiring that forfeiture be directly tied to the commission of drug offenses. *Id*. at 619-20. The Supreme Court concluded that forfeiture under these federal statutes constituted payment for punishment for some offense and was, therefore, subject to the limitations of the Excessive Fines Clause. *Id*. at 622. The Supreme Court stopped short of indicating exactly what was excessive and remanded the case to the Court of Appeals for such a determination. *Id*.

¶7. The United States Supreme Court has not yet prescribed a test for determining whether a forfeiture is an excessive fine. The State argues that the Excessive Fines Clause of the Eighth Amendment does not apply to the states. *Pervear v. Commonwealth*, 72 U.S. 475 (1866); *Knapp v. Schweitzer*, 357 U.S. 371 (1958). The Mississippi Constitution has its own excessive fines clause, which is identical to the Excessive Fines Clause of the United States Constitution. Miss. Const. art. 3 § 28 (1890). This Court can look to the United States Supreme Court for guidance or we can develop our own application under Miss. Const. art 3 § 28. Other courts have primarily employed two tests when determining whether a forfeiture is excessive.

¶8. The Fourth Circuit, in *United States v. Chandler*, 36 F.3d 358 (4th Cir. 1994), has adopted the "instrumentality test," which requires an analysis of the following three factors, when determining whether forfeiture is excessive:

> (1) the nexus between the offense and the property and the extent of the property's role in the offense,
>
> (2) the role and culpability of the owner, and
>
> (3) the possibility of separating the offending property from the remainder.

*Id*. at 365. This test focuses on how closely the property is tied to the crime and whether the property was instrumental to the crime committed. If the above three requirements are met, the forfeiture is

considered constitutional. Since the Supreme Court's *Austin* decision, a number of other courts of appeal have applied the Excessive Fines Clause in the forfeiture context. Only the *Chandler* court has adopted Justice Scalia's "instrumentality" approach as the sole inquiry.[(2)]

¶9. At the other end of the spectrum, one circuit has concluded that "the appropriate inquiry with respect to the Excessive Fines Clause is, and is only, a proportionality test" that compares the value of the property forfeited with the severity of the crime committed. *United States v. One Parcel Property Located at 427 & 429 Hall Street*, 74 F.3d 1165, 1170 (11th Cir.1996)(rejecting *Chandler* court's analysis and instrumentality test). Several courts of appeal, meanwhile, have adopted tests that combine instrumentality and proportionality inquiries. *See* *United States v. Premises Known as 6040 Wentworth Avenue South*, 123 F.3d 685, 688-89 (8th Cir.1997) (applying "gross disproportionality" analysis including both proportionality and instrumentality factors); *United States v. One Parcel Property*, 106 F.3d 336, 338 (10th Cir.1997) (applying instrumentality test first, then proportionality test); *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road,* 59 F.3d 974, 983 (9th Cir.1995) (adopting "proportionality test as a check on the instrumentality approach"); *United States v. Milbrand*, 58 F.3d 841, 847 (2d Cir.1995) (applying multi-factor analysis including both proportionality and instrumentality factors), *cert. denied*, 516 U.S. 1182(1996); *United States v. Premises Known as RR # 1, Box 224, Dalton*, 14 F.3d 864, 876 (3d Cir.1994) (remanding with instructions to apply instrumentality test first, then examine proportionality). The Sixth Circuit has addressed the question but declined to adopt an approach, *see* *United States v. Certain Real Property Located at 11869 Westshore Drive*, 70 F.3d 923, 930 (6th Cir.1995), *cert. denied*, 117 S.Ct. 57(1996), while the First, Fifth, and District of Columbia Circuits apparently have yet to consider the issue.

¶10. As a court, we can not view forfeiture cases in a vacuum. The test employed must be one that permits forfeiture of property from those persons who utilize said property in furtherance of their own criminal activity. Yet, the test must also be flexible so as not to permit forfeiture where innocent persons will suffer or where the value of the property is grossly disproportionate to the crime.

¶11. Given that the weight of authority among the courts of appeal strongly favors the use of both instrumentality and proportionality review in this context, we decline to employ solely the instrumentality test. One can easily imagine cases in which the freestanding instrumentality approach could lead to results that are "excessive fines" under the circumstances.

¶12. A proportionality analysis is especially appropriate in the civil forfeiture context because it is the sovereign that profits from such forfeitures. *See* *United States v. 6380 Little Canyon Road,* 59 F.3d at 983 (adopting "proportionality test as a check on the instrumentality approach"). Justice Scalia recognized this when he stated:

> There is good reason to be concerned that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence. Imprisonment, corporal punishment and even capital punishment cost a State money; [whereas] fines are a source of revenue... [I]t makes sense to scrutinize governmental action more closely when the State stands to benefit.

*Harmelin v. Michigan*, 501 U.S. 957, 978 n.9 (1991) (Scalia, J., plurality opinion). All property, such as that which is at issue here, that is forfeited to Mississippi law enforcement agencies is either

liquidated, in which case the arresting agency is entitled to a portion of the proceeds, or kept by the arresting law enforcement agency for its own use and benefit. Miss. Code Ann. 41-29-181 (Supp. 1997). This incentive enhances the need for close scrutiny of *in rem* forfeitures. For this reason, the judiciary should be alert to detect constitutionally proscribed injustices imposed on individual wrongdoers. ***6380 Little Canyon Road,*** 59 F.3d at 984-85.

¶13. This Court recognizes the factually intensive nature of forfeiture cases and we elect to apply a test that combines the three prongs of the "instrumentality" test with a "proportionality" review. The elements of the test that we elect to employ are as follows:

(1) The nexus between the offense and the property and the extent of the property's role in the offense;

(2) The role and culpability of the owner;

(3) The possibility of separating the offending property from the remainder; and

(4) Whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

¶14. The above test combines the elements of the instrumentality test with a weighing of proportionality on the individual circumstances of each case to determine whether the forfeiture is excessive. It avoids the harsh and unjust results that can be, and will be, produced by the implementation of a "bright-line" instrumentality test. At the same time, it allows the lower courts, and this Court on review, to consider all relevant factors under a framework that is simple, yet complete.

¶15. As outlined in this opinion, the vast majority of federal courts have also elected to temper the instrumentality with a proportionality review. In fact, the Fourth Circuit appears to be the only circuit that strictly follows solely an instrumentality test. ***United States v. Chandler***, 36 F.3d 358 (4th Cir. 1994).

¶16. The analysis under the proportionality test that we employ here is two-part. First, under the "instrumentality" (or "nexus") test, the forfeited property must have a sufficiently close relationship to the illegal activity. Second, under the "proportionality" test, forfeiture of the property must not impose upon the owner a penalty grossly disproportionate to his offense.

¶17. With these enunciated principles in mind, we proceed to determine whether the forfeiture of the 1979 Ford van and the two bank accounts are proper under the test we have set forth above.

*1979 Ford van*

¶18. Conrod pled guilty to conspiracy to distribute 500 grams or more of cocaine and the commission of a drug crime with a firearm which are felonies set forth in 21 U.S.C. §§ 841 and 846. This crime carries a maximum of fifteen years and possibly a $25,000 fine. Conrod drove the van to the site where the terms and details of the drug buy were negotiated. On the night of the actual drug deal, Conrod was driving a Corvette while others with him drove a Maxima. As he is the sole owner of the

van, there are no innocent third parties that could be affected.

¶19. For forfeiture to be permissible, there must be sufficient nexus between the offense and the property and the extent of the property's role in the offense. The crime at issue here is not an isolated case of mere possession of a small quantity of illegal drugs. Conrod pled guilty to conspiracy to distribute a large amount of cocaine. In furtherance of this conspiracy, Conrod used the van to facilitate the eventual drug deal, which gives the van a role in the conspiracy. In addition, the van provided a cover for Conrod, as a different vehicle was employed to consummate the sale. The nexus between the property, the van, and the offense, conspiracy to distribute, was sufficiently established and the lower court was not clearly erroneous in its finding that the van should be forfeited.

¶20. We now proceed to determine whether the forfeiture of the van was excessive in light of the Eighth Amendment. Our inquiry brings us to the fourth prong of the test that we have set forth above. Specifically, we must determine whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

¶21. After careful review of the record, we hold that the forfeiture of the van was not grossly disproportionate to the crimes committed or grossly disproportionate to the culpability of Conrod. As noted above, Conrod was engaged in a conspiracy to distribute a large amount of cocaine. When arrested, Conrod had over $90,000 in his possession. In light of the severity of the crime and the amount of drugs and money involved, we can not say that the lower court erred in ordering forfeiture of the 1979 Ford van. The forfeiture of the van is affirmed.

### The two bank accounts

¶22. Conrod argues that there was insufficient evidence to support a judgment of forfeiture of the two bank accounts. The burden of proof the State must meet in forfeiture proceedings is a preponderance of the evidence. Miss. Code Ann. § 41-29-179(2) (1993). The State used the testimony of Agent Anderson to tie together the van and the bank accounts with illegal drug transactions. Anderson testified that Conrod told her that his grocery store was not doing well. As to the bank accounts, Anderson testified that she could not point to any drug sale or transaction that contributed proceeds to either the $6,912 or the $6,061.90 account. Conrod's accountant testified that he prepared Conrod's income tax returns in 1988, 1989, and 1990. The testimony indicated that Conrod had excessive amounts of cash in excess of what would normally be expected from the operation of a store or working at a factory.

¶23. This Court has held that when a judge sits without a jury, it will not overturn a finding unless the judge was clearly erroneous or applied incorrect legal standards. *McClendon v. State*, 539 So.2d 1375, 1377 (Miss. 1989). In *Mullins v. Ratcliff*, 515 So.2d 1183, 1189 (Miss. 1987), this Court held that it will not reverse a trial court's finding of fact unless it is manifestly wrong. It is not necessary for the government to trace property to a particular drug transaction for property to be forfeited; rather, it is a totality of the circumstances, not a minute accounting of each item of information, that leads to meeting the burden of proof. *United States v. 127 Shares of Stock in Parodign Mfg., Inc.,* 758 F.Supp. 581 (E.D. Cal. 1990).

¶24. We find that the trial judge was clearly erroneous in determining that the bank accounts could be

forfeited. The State's witness could not tie the monies in the bank accounts with any criminal conduct on behalf of Conrod. Thus, there is no nexus between the bank and the crime committed by Conrod. As to the two bank accounts, we hold that there was insufficient evidence to hold that the relationship of the property was close enough to render the property guilty and thus forfeitable. We reverse and render as to the forfeiture of the two bank accounts.

## B. Does this forfeiture violate the Double Jeopardy Clause of the Fifth Amendment?

¶25. Conrod asserts that the beginning of forfeiture proceedings after he had entered a plea of guilty violates the Double Jeopardy Clause of the Fifth Amendment. Conrod did not raise this issue in the lower court. It is established that this Court will not review matters on appeal that were not considered by the lower court. *Ditto v. Hinds County*, 665 So.2d 878, 880 (Miss. 1995). This issue is procedurally barred.

## II. DID THE TRIAL COURT ERR BY QUESTIONING THE WITNESS?

¶26. During the forfeiture hearing, the judge directly asked several questions of the witnessess, including the defendant. Conrod argues this was error because it amounted to the court literally prosecuting the case on behalf of the State.

¶27. Rule 614(b) of the Mississippi Rules of Evidence specifically provides that the "court may interrogate witnesses, whether called by itself or by a party." "A trial judge has the responsibility, within judicial discretion, of confining the testimony during trial to the issues before it." *Hannah v. State*, 336 So.2d 1317, 1321 (Miss. 1976). The questions asked by the lower court in this case all had to do with the issues brought out during that particular witness's testimony. The lower court appropriately confined its questions. The State also noted that the main concern in those cases cited by Conrod addressing this issue is the possible influence of a jury by the questions and comments of the judge. The case at bar was a bench trial. Furthermore, the record reveals that counsel for Conrod was allowed to question each witness following questioning by the court. The lower court is affirmed on this issue.

## III. DID THE TRIAL COURT ERR BY ALLOWING THE STATE TO RECALL AGENT ANDERSON AS A REBUTTAL WITNESS WHEN THE RULE HAD BEEN INVOKED?

¶28. The State called Agent Anderson in rebuttal to which Conrod objected based on the fact that the Court ordered witnesses excluded from the courtroom at the request of counsel for the State, pursuant to M.R.E. 615, a practice known in Mississippi trial procedure as invoking "the Rule". Agent Anderson testified first and apparently remained in the courtroom throughout the trial. The lower court allowed the examination. Conrod asserts that this was error.

¶29. M.R.E. 615 provides that the court, at the request of either party or on its own motion, shall order witnesses excluded from the courtroom so that they can not hear the testimony of other witnesses. M.R.E. 615. However, the rule authorizes the State to have a designated representative present for the trial. *Id.* It does not appear Agent Anderson was so designated in the record.

¶30. Whether a witness may testify after being present in the courtroom for the testimony of previous

witnesses is within the discretion of the trial judge. *Davis v. State*, 472 So.2d 428, 434 (Miss. 1985). A review of the record reveals that the State asked only two questions of Agent Anderson on rebuttal. Further review of the record reveals that neither question concerned the subject matter of the forfeiture proceedings. Additionally, Conrod was afforded an opportunity to, and did, conduct a rebuttal cross examination on Agent Anderson. Under these facts, the trial judge did not abuse his discretion in allowing Anderson to testify in rebuttal. This assignment of error is without merit.

## CONCLUSION

¶31. Because there was insufficient evidence to establish a nexus between the bank accounts and the crimes committed by Conrod, we can not hold that the two bank accounts are "proceeds" of illegal activity. Therefore, the two bank accounts were not properly ordered forfeited and we reverse and render as to this issue.

¶32. The 1979 Ford van was used to facilitate the furtherance of the conspiracy, and taking into account the severity of the crime and the amount of drugs and money involved, its forfeiture was not grossly disproportionate to the crimes committed. The lower court correctly ordered forfeiture of the van and we affirm. The remaining assignments of error asserted by Conrod are without merit.

¶33. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶34. I respectfully dissent.

¶35. The majority states that Conrod did not raise a claim of double jeopardy in the lower court and that as a result, the issue is barred. However, this Court does not apply procedural bars when error affects fundamental constitutional rights, and an individual's protection from double jeopardy is such a fundamental right. *Fuselier v. State*, 654 So. 2d 519, 522 (Miss. 1995). Accordingly, Conrod's assertions should be evaluated by this Court. I am compelled, then, to address the unconstitutionality of the forfeiture of Conrod's van.

¶36. The van in this forfeiture proceeding was used in connection with the criminal offense to which Conrod previously pleaded guilty. Therefore, the subsequent attempt by the State to command forfeiture of the van subjected the State's action to analysis pursuant to the Double Jeopardy Clause of the Mississippi Constitution. *See* Miss. Const. art. 3, §§ 22, 28. While the Mississippi forfeiture statute attempts to categorize this forfeiture as civil in nature, it clearly derives from a criminal charge.

¶37. The majority reasons that since the van in this case was used to facilitate the sale of drugs, it could be forfeited. Pursuant to the Mississippi Constitution, "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22. Under the majority interpretation of the Mississippi Double Jeopardy Clause, recently espoused in *Keyes v. State*, 708 So. 2d 540, 548 (Miss. 1998), jeopardy does not attach without a proceeding, or the risk of a determination of guilt. Apparently, a defendant may be punished repeatedly (and indefinitely), so long as those punishments are not brought in a "proceeding." It seems, then, that if the State charges and convicts a defendant of a crime, and subsequently begins a civil forfeiture "proceeding," double jeopardy analysis must apply, at least under the Double Jeopardy Clause of the Mississippi Constitution and this Court's interpretation of it. Here, the defendant has already been convicted, and the second proceeding constitutes a subsequent determination of guilt. Although the majority may reason that the "guilty property" is the focus of the second proceeding, such a forfeiture is really a determination of the culpability of an individual defendant, no matter how it is couched semantically. This fiction should not "hold water" when viewed in light of the Mississippi Constitution, which provides that no person shall be deprived of his property without due process of law. Miss. Const. art. 3, §14. To be certain, the "guilty property" fiction has outlived its usefulness. *See* *State v. Fleming*, No. 96-KA-00272-SCT, 1998 WL 304544 at *4 (Miss. June 11, 1998)(McRae, J., dissenting).

¶38. Once the State seizes property under the claim that it was an instrumentality of a crime, double jeopardy analysis must be triggered. In effect, the State is taking property related to a crime for which a defendant has already been charged and convicted. The State cannot proceed as it did in this case without violating the Double Jeopardy Clause. If the forfeiture of property results in a defendant being subjected to multiple punishments for the same offense, the Double Jeopardy Clause protects the property from forfeiture. The only manner by which the State should be able to seize property is to do so at the actual time a defendant is charged with a crime and to combine the criminal proceeding with the forfeiture proceeding.

¶39. It is for these reasons that I dissent. Realizing the potential for injustice being imposed upon individuals, the majority apparently expresses some interest in closely scrutinizing the constitutionality of forfeitures pursuant to the Excessive Fines Clause of the Mississippi Constitution. This Court should also be analyzing Mississippi's forfeiture scheme under the lens of the Double Jeopardy Clause. Given the protections afforded by the Double Jeopardy Clause of the Mississippi Constitution, Conrod's van should not have been forfeited.

### BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶40. I agree wholeheartedly with the test that the court enunciates and its disposition with respect to the bank accounts. I disagree, however, with its application of the instrumentality prong of its test to the van in question. In my view, the record in this case does not indicate that the van played a substantial role in the criminal conduct. It follows that an instrumentality analysis which conforms to the Excessive Fines Clause would dictate reversal, even though a proportionality analysis would not.

¶41. The instrumentality test focuses the analysis of excessiveness on whether the property in question was sufficiently instrumental in the commission of the underlying crime to warrant its

forfeiture. Under this test, a forfeiture is unconstitutionally excessive if it is not adequately connected to the commission of the crime so as to be "tainted" by the illegal activity and, consequently, forfeitable. Examples of "tainted" property include items such as the actual cash proceeds from illegal commercial activities or the home in which an illegal drug enterprise was operating.[3] *See, e.g.* ***State v. Meister,*** 866 S.W.2d 485 (Mo. Ct. App. 1993) (proceeds from drug sales); ***In re King Properties,*** 635 A.2d 128 (Pa. 1993) (residence in which drug sales were believed to have occurred).

¶42. The "instrumentality" test relies on the theory that civil forfeiture has traditionally been designed to assess punishment against offensive property that has played a guilty role in the commission of a crime, as distinct from punishing a human defendant for his guilty role in the commission of a crime. *Austin v. United States*, 509 U.S. 602, 615 (1993) (*citing* ***The Palmyra,*** 25 U.S. (12 Wheat.) 1, 14-15 (1827) (forfeiture of vessel for piracy); *Harmony v. United States,* 43 U.S. (2 How.) 210, 233-34 (1844) (forfeiture of vessel for piracy, although not the cargo); ***Dobbins's Distillery v. United States,*** 96 U.S. 395, 400-403 (1878) (forfeiture of distillery and real property for evasion of revenue laws); *J.W. Goldsmith, Jr.-Gran Co. v. United States,* 254 U.S. 505, 510-511 (1921) (forfeiture of goods concealed to avoid taxes)). Because the property itself is considered the offending party, the instrumentality test focuses its analysis on how closely the property is tied to the crime. Only if the property has been instrumental in the commission of the crime, in the sense of having played a substantial role, it is forfeiture is constitutional.

¶43. As the majority notes the United States Court of Appeals for the Fourth Circuit has addressed the instrumentality test. ***United States v. Chandler***, 36 F.3d 358 (4th Cir. 1994). The court held that in determining the excessiveness of an in rem forfeiture under the Eighth Amendment, "a court must apply a three-part instrumentality test that considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder." ***Id.*** at 365. These same factors are adopted by today's majority. The ***Chandler*** court went on to further refine the analytical factors in determining part (1) of the test, the nexus between the offense and the property as follows:

> [i]n measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense. *No one factor is dispositive but, to sustain a forfeiture against an Eighth Amendment challenge, the court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offensive conduct been carried out as intended.*

***Id.*** (emphasis added). In my view, consideration of these factors is a sensitive and systematic approach to the task compelled by the Excessive Fines Clause.

¶44. In ***United States v. One 1990 Ford Ranger Truck, VIN No. 1FTCR10TALUCO8885***, 876

F.Supp. 1283 (N.D. Ga. 1995), *aff'd on reh'g,* 888 F.Supp. 1170 (N.D. Ga. 1995), we find an example of the application of these criterias. The federal district court applied a portion of the ***Chandler*** formulation to conclude that the forfeiture of the defendant truck was an unconstitutionally excessive fine. In conducting its analysis, the court adopted the jury findings that the defendant truck had been used to transport hallucinogenic mushrooms from the owner's home to a Grateful Dead concert at the Atlanta Omni Coliseum and that the owner and the other passenger in the vehicle were preparing to ingest or otherwise utilize the mushrooms unlawfully when officers approached the defendant vehicle. ***One 1990 Ford Ranger Truck, VIN No. 1FTCR10TALUCO8885***, 888 F.Supp. at 1175.

¶45. Although the defendant's vehicle was found to have been used to transport the controlled substances, the court concluded "that the connection between the truck and the illegal activity at issue [was] too attenuated to satisfy the Eighth Amendment, under the factors listed by the ***Chandler*** court." ***Id.*** at 1175. Upon reconsideration, the court reiterated the various ***Chandler*** factors that weighed against forfeiture, including: (1) "[t]here was no evidence that the truck was used extensively in connection with the drug activity at issue in this case, or in connection with any other drug activity;" (2) "there was no evidence that the truck was purchased for the purpose of engaging in drug-related activities;" and (3) "there was no evidence that the truck was important to the offense at issue." ***Id.*** at 1176.

¶46. The court considered the argument that the truck was purposefully selected by the claimants for the purpose of dividing, consuming, or otherwise using the mushrooms. In response, the court stated that "there was no evidence that the truck was special in some way that another location (such as a public restroom or the shelter of a suitable outdoor structure) would not have been. If the court accepted the government's argument [that the choice of the truck was deliberate and thus legally important], then any place where illegal activity occurred would be imbued with special significance simply because the illegal activity occurred there and not somewhere else." ***Id.*** After noting the difference between the deliberate choice of the vehicle and the legal importance of the vehicle, the court concluded that the instrumentality test had not been satisfied.

¶47. In my view the majority fails to correctly analyze the facts in applying the instrumentality prong of the test it enunciates. There is no evidence which suggests that the illegal use of the property was other than an isolated event or that the van was purchased or especially maintained to carry out the purchase and use of illegal drugs. There is little in the record to suggest that the use of the van, as opposed to some other mode of transportation, was deliberate. In fact, when he sought to consummate the proposed transaction, Conrod drove his Corvette and others with him drove a Maxima. There is nothing to suggest that the use of the van on the occasion of the negotiation was other than a fortuitous and isolated occurrence. Furthermore, there is nothing to suggest that the use of the van on the evening of the negotiation was important to the criminal enterprise. *See **United States v. Chandler***, 36 F.3d 358 (4th Cir. 1994) (finding that use of a 33-acre farm in extensive drug transactions had been important to the illegal activity where farm was secluded off of a private road and owner had installed a security camera on the private driveway in order to utilize the property's seclusion in carrying out drug transactions, and farm's caretakers were paid in drugs); *cf.* ***United States v. One 1990 Ford Ranger Truck, VIN No. 1FTCR10TALUCO8885***, 888 F.Supp. 1170, 1176 (N.D. Ga. 1995) (holding that truck in which owner and passenger had transported illegal drugs and in which they were preparing to ingest was not sufficiently instrumental to the illegal activity to

pass constitutional muster) (*citing United States v. Real Property Located at 6625 Zumirez Drive*, 845 F.Supp. 725, 737 (C.D. Cal. 1994) ("[F]or the property to be the site of the illegal activity, without more, does not render the property an integral part of the activity.")).

¶48. The majority, in essence, suggests that because this was a conspiracy involving a large amount of drugs rather than an isolated instance, the van was *per force* instrumental. The test is not whether the transaction is isolated but rather whether the use of the van is. It also suggests that the van was possibly used as a cover. This suggestion is curious in light of the fact that the van was owned by the alleged drug dealer and registered solely in his name. Clearly it provided no more cover and possibly less than any other vehicle. In my view the use of the van was not shown to be ″a substantial and meaningful instrumentality in the commission of the offense." I would reverse the judgment of the trial court because the record does not indicate a sufficient nexus between the property and the crime to justify this forfeiture under the Excessive Fines Clause of our constitutions.


### SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶49. In the case sub judice, the majority declines to employ solely the instrumentality test and adopts the use of both the instrumentality and proportionality review in regards to forfeiture of property. This combined test is unnecessary. Therefore, I respectfully dissent to this portion of the majority opinion.

¶50. Scalia's instrumentality test provides a sufficient analysis for forfeiture cases. As the majority stated, "[t]his test focuses on how closely the property is tied to the crime and whether the property was instrumental to the crime committed. If the . . . three requirements are met, the forfeiture is considered constitutional." Under this test, if the forfeited property meets the test of instrumentality, it is never excessive. Therefore, further analysis under the proportionality review is superfluous.

¶51. Furthermore, in adopting the "instrumentality test" in *Austin*, Justice Scalia wrote that the "relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Austin*, 509 U.S. at 628 (Scalia, J., concurring in part). Consequently, if the property is "guilty," it cannot be excessive.

¶52. The "proportionality review" may be appropriately utilized in those cases where the property seized is not an instrumentality to the crime. The court may in these instances consider employing the "proportionality test," which compares the value of the property forfeited with the severity of the crime committed.

¶53. Because forfeiture is an *in rem* action, the "instrumentality test" is the appropriate analysis and under this test the van in the case sub judice was properly forfeited. Also utilizing the "instrumentality test" the majority correctly concluded that the money was not properly forfeited since it could not be connected to the crime.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. The action originally involved certificates of deposit, bank accounts, two vehicles, and other defendants with various ownership interests.

2. The sole instrumentality test advocated by Justice Scalia in his concurring opinion in *Austin* was not joined by any of the other justices.

3. Although direct proceeds from illegal transactions are perhaps the clearest example of "tainted" or "guilty" property, their forfeiture does not trigger the restraints of the Excessive Fines Clause in the manner that the forfeiture of other types of "tainted" property does. Direct proceeds from illegal transactions are contraband in which a claimant has no constitutionally protected property interest. Thus, its forfeiture by the government is not a fine.