# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00653-SCT

*WARREN L. LEWIS REVOCABLE TRUST, DAVID D. SMITH, TRUSTEE*

*v.*

*STATE OF MISSISSIPPI, EX REL. LAMAR COUNTY SHERIFF'S DEPARTMENT*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2015 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | DOUGLAS E. MILLER |
| | LAUREN B. HARLESS |
| | H. H. KLEIN, III |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | H. H. KLEIN, III |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAUREN B. HARLESS |
| | DOUGLAS E. MILLER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 09/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND BEAM, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     The Lamar County Sheriff's Department ("LCSD") arrested Warren L. Lewis for possession with intent. Lewis ultimately pled guilty in federal court to possession with intent to distribute five grams or more of methamphetamine. Shortly thereafter, the State initiated a forfeiture proceeding and sought real property, personal property, and currency owned by

Lewis. The trial court awarded the State all of the property sought. Lewis moved for a new trial, or alternatively, to amend the judgment, which the trial judge denied. As trustee of Lewis' revocable trust,[1] David Smith now pursues this appeal. We affirm in part, and reverse and render in part.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 20, 2013, LCSD employed a confidential informant ("CI") to purchase 24.77 grams of methamphetamine from Lewis. The transaction took place at Lewis' residence at 1106 Little Black Creek Road, Lumberton, Mississippi. The following day, LCSD obtained search warrants for three residences: (1) Lewis's residence; (2) a camper at the end of Lewis's driveway occupied by Danny Newsome; and (3) Tommy Lucas's residence—which Lewis owned—at 1022 Myrick Avenue, Lumberton, Mississippi.

¶3. The November 21st search of Lewis' residence revealed a safe containing a bank statement and $33,300 in United States currency. Using serial numbers to identify the currency, LCSD determined that seventeen of the one hundred dollar bills stored in the safe had been used by the CI to purchase methamphetamine from Lewis the day before. Deputies also discovered numerous firearms, as well as two small plastic bags containing methamphetamine. When deputies searched the property outside Lewis' residence, they

---

[1]Warren Lewis died on December 25, 2015. He previously had transferred all of his property into the Warren L. Lewis Revocable Trust and had named David D. Smith as Trustee. After Lewis's death, his attorney filed a motion requesting that Smith be substituted as the appellant. This Court granted the motion to substitute on January 7, 2016.

discovered a small amount of methamphetamine in a vehicle belonging to Denise Briggs.[2]

Deputies also discovered an empty ammunition can buried near the corner of a shed.[3]

¶4.    Upon further examination of the bank statement found in the safe, deputies obtained search warrants and seizure warrants for two bank accounts and a safety deposit box registered in Lewis' name.  LCSD recovered $38,496.90 from the two bank accounts, and they recovered $20,720 in cash, a Smith and Wesson revolver with registration paperwork, and various other documents containing tax and land information from the safety deposit box.  Upon completion of the initial search of Lewis' property and seizure of the bank accounts and safety deposit box, LCSD arrested Lewis on November 21, 2013.

¶5.    On November 26, 2013, LCSD obtained a second search warrant for Lewis' residence.  During the execution of the second search warrant, LCSD discovered an ammunition can containing 2,231 grams of methamphetamine.  LCSD also seized the following items belonging to Lewis: one 2008 GMC truck; one 2004 Chevrolet truck; two John Deere bulldozers; and two Honda four-wheelers.  The stipulated value of the seized vehicles was $90,675.  Additionally, LCSD seized numerous firearms from inside Lewis' residence.  During the course of this second search, Lewis remained in custody at the Lamar County jail in Purvis, Mississippi.

---

[2]Denise Briggs admitted the methamphetamine found inside her vehicle on Lewis' property was hers and later pleaded guilty for possession of that methamphetamine.

[3]The CI employed by LCSD told investigators that Lewis had buried drugs on his property at 1106 Little Black Creek Road, Lumberton, Mississippi.

¶6.    In addition to the personal property mentioned above, LCSD also seized nine separate parcels of real property—totaling 419 acres—owned by Lewis. The stipulated value of the nine parcels of real property with improvements was $1,381,115. Based on the stipulation regarding ownership, Lewis purchased eight parcels in 1994[4] and one parcel in 2007. The total amount of cash seized from Lewis' safe, the two bank accounts, and the safety deposit box had a stipulated value of $92,516.90. In sum, the total stipulated value of real property, personal property, and cash seized from Lewis—excluding the firearms[5]—amounted to $1,564,306.90.

¶7.    Shortly after the second search, federal law enforcement took over the case. On January 7, 2014, a federal grand jury indicted Lewis on three separate counts. Count I charged Lewis and Tommy Lucas ("Lucas") with "conspiracy to possess with intent to distribute" fifty grams or more of methamphetamine, beginning sometime in 2011 and continuing until the day of indictment. Count II alleged that on November 20, 2013, Lewis and Lucas possessed and intended to distribute five grams or more of methamphetamine. And Count IV[6] alleged that on November 21, 2103, Lewis possessed and intended to distribute fifty grams or more of methamphetamine. On July 29, 2014, Lewis and Lucas pled guilty to Count II of the federal indictment. Lewis was sentenced to 200 months in prison

_____

[4]It appears from the stipulation that one of these parcels was also the subject of a 2004 warranty deed, but neither the stipulation nor the record contains any additional information regarding the 2004 transaction.

[5]Lewis did not contest the State's seizure of the firearms at trial, nor does he argue that issue on appeal.

[6]Count III charged Lucas only.

and fined $289,480.[7] The United States dismissed the remaining charges against Lewis and Lucas.[8]

¶8.     Toward the conclusion of the forfeiture trial, Lewis moved for a directed verdict. He argued that the State failed to prove that he utilized all the property to facilitate his criminal activity, or that he purchased the property with proceeds generated from his criminal activity. The trial judge denied Lewis' motion for a directed verdict and noted that at the end of the trial, a fact finder might reasonably believe that the State had satisfied its burden.

¶9.     Ultimately, the trial judge found in the State's favor and awarded it all the property sought in its Petition. The trial judge then denied Lewis' Motion for New Trial or to Amend the Judgment. Trustee David Smith now appeals to this Court and asserts the following: (1) that the State failed to prove entitlement to the property or, "at the very least," the trial court should have made particularized findings with respect to each piece of property; (2) Alternatively, that the forfeiture violated the Excessive Fines Clause[9]; and (3) that the trial court erred by not suppressing the fruits of the November 26, 2013, search warrant because the underlying facts did not demonstrate the CI's reliability. We find the first issue

---

[7]Tommy Lucas was sentenced to 95 months in prison and fined $5,000.

[8]The State of Mississippi also had indicted Lewis, under Mississippi Code Section 41-29-139 (a)(1), which prohibits the sale of controlled substances, and under Section 41-29-152, which enhances the punishment for offenders who sell controlled substances while in possession of a firearm. The record does not indicate what became of these charges.

[9]Lewis argues that the *entire* forfeiture award was excessive in relation to the crime for which he pled; he does not argue that forfeiture of the individual pieces of real or personal property is excessive.

5

dispositive, so we decline to address Lewis' second, alternative argument. And though we have carefully reviewed Lewis' third argument, we find that it merits no further discussion.

**STANDARD OF REVIEW**

¶10. This Court has held that forfeiture statutes are penal in nature and must be strictly construed. ***Parcel Real Property Located at 335 West Ash Street, Jackson, Miss. v. City of Jackson***, 664 So. 2d 194, 199 (Miss. 1995). In civil forfeiture cases, the question is, "given all of the evidence considered together, a rational trier of fact may have found by a preponderance of the evidence that [the defendant's property was] the product of or [an instrumentality] of violations of this state's controlled substances act." ***Hickman v. State ex rel. Miss. Dep't of Public Safety***, 592 So. 2d 44, 48 (Miss. 1991). The trier of fact may rely on circumstantial evidence as well as direct evidence in making such a determination. ***Id.*** at 46.

**ANALYSIS**

¶11. In pertinent part, Mississippi Code Section 41-29-153 provides that the following are subject to forfeiture:

> (1) All controlled substances which have been manufactured, distributed, dispensed or acquired in violation of this article or in violation of Article 5 of this chapter;
>
> (2) All raw materials, products and equipment of any kind which are used, or intended for use in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this article or in violation of Article 5 of this chapter;
>
> (4) All *conveyances*, including aircraft, *vehicles* or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation,

6

sale, receipt, possession or concealment of property described in paragraph (1) or (2) of this subsection;

(5) All *money*, *deadly weapons*, books, records, and research products and materials, including formulas, microfilm, tapes and data which are used, or intended for use, in violation of this article or in violation of Article 5 of this chapter;

(7) *Everything of value, including real estate, furnished, or intended to be furnished, in exchange for a controlled substance in violation of this article, all proceeds traceable to such an exchange, and all monies, negotiable instruments, businesses or business investments, securities, and other things of value used, or intended to be used, to facilitate any violation of this article.* All monies, coin and currency found in close proximity to forfeitable drug manufacturing or distributing paraphernalia, or to be forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be forfeitable under this paragraph; the burden of proof is upon the claimants of the property to rebut this presumption.

Miss. Code Ann. § 41-29-153 (a) (1), (2), (4), (5), (7) (Rev. 2013) (emphasis added). "The standard of proof placed upon the petitioner in regard to property forfeited under the provisions of this article shall be by a preponderance of the evidence." Miss. Code Ann. § 41-29-179 (2) (Rev. 2013).

¶12.    This Court has adopted a test to determine the lawfulness of forfeitures. ***One (1) Charter Arms, Bulldog 44 Special, Serial No. 794774 v. State ex rel. Moore***, 721 So. 2d 620 (Miss. 1998). The test combines a three-pronged instrumentality test with a proportionality review. ***Id.*** at 624-25. So when determining whether a forfeiture is proper, we analyze four elements:

(1) the nexus between the offense and the property and the extent of the property's role in the offense;

(2) the role and culpability of the owner;

7

(3) the possibility of separating the offending property from the remainder; and

(4) whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner.

*Id.* at 625. Essentially, the first three elements ensure a sufficiently close relationship between the property and the illegal activity. *Id.* The fourth element protects offenders from forfeitures that are grossly disproportionate to the offense. *Id.*

¶13. With these standards in mind, we now examine each piece of property to determine if the State proved by a preponderance of the evidence that it was entitled to the forfeiture.

**A.     The State proved by a preponderance of the evidence that it was entitled to forfeiture of the following property.**

*1. Real Property at 1106 Little Black Creek Road, Lumberton, Mississippi.*

¶14. We find that the State proved by a preponderance of the evidence that it was entitled to forfeiture of Lewis' primary residence at 1106 Little Black Creek Road, Lumberton, Mississippi. As quoted above, real estate is forfeitable when used to violate, or to facilitate a violation of, the Mississippi Uniform Controlled Substances laws. Here, the State successfully proved that Lewis used his residence in furtherance of his methamphetamine operation.

¶15. First and foremost, LCSD executed a controlled purchase of methamphetamine via a CI at Lewis' primary residence. This evidence is sufficient to prove a direct violation of Mississippi's Uniform Controlled Substances laws. In fact, LCSD equipped the CI with a video camera, which captured a still shot of Lewis holding the plastic bag of methamphetamine in his hand. Furthermore, when LCSD conducted a warranted search of

8

Lewis' residence, deputies discovered the money the CI had used to buy the methamphetamine, as well as two small plastic bags containing methamphetamine.

¶16.    In addition to what investigators discovered inside Lewis' residence, they also discovered 2,231 grams—which equates to roughly five pounds—of methamphetamine buried outside Lewis' residence. This evidence is sufficient to prove a direct violation of Mississippi's Uniform Controlled Substances law. In *Parcel Real Property Located at 335 West Ash Street*, this Court upheld a forfeiture of real property where the property was being used to facilitate the sale of illegal drugs. 664 So.2d 194 Miss. (1995). Here, Lewis used his residence and surrounding property to sell and to facilitate the sale of drugs.

¶17.    So, having established the nexus between the property and the offense, we examine the remaining elements set forth in the *Charter Arms* test. The culpability of the owner analysis is fairly concise here, given the fact that Lewis pled guilty to possession with intent to distribute five grams or more of actual methamphetamine, an offense that occurred at his residence. We find that Lewis' guilty plea sufficiently establishes his role and culpability in relation to the offense which occurred at his residence.

¶18.    As for "the possibility of separating the offending property from the remainder," we note that Lewis purchased this piece of real property via a single deed, executed in March 1994. During the searches, investigators discovered methamphetamine in several different places at Lewis' residence. Some was discovered inside the house and some outside the house on the property. As such, we find that it would be quite difficult to separate the offending areas of the property from the remaining non-offending areas.

¶19. Finally, we must determine "whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the crime or grossly disproportionate to the culpability of the owner." **Charter Arms,** 721 So. 2d at 625. The parcel of real property at issue here contains nearly 226 acres, a dwelling house, a six-stall barn, a feed shed, and a storage building. At the time of forfeiture, the property was valued at $564,970.

¶20. But in closing arguments, the State observed that the crime to which Lewis pled guilty carried a potential fine of up to $2,000,000.[10] Because Lewis could have been fined up to $2,000,000 under federal law, we find that the forfeiture of his residence did not divest him of property which has a value grossly disproportionate to the crime or to his culpability. In sum, after analyzing the **Charter Arms** factors, we find the forfeiture of Lewis' residence proper. We therefore affirm the trial court's judgment as to the forfeiture of Lewis' real property at 1106 Little Black Creek Road, Lumberton, Mississippi.

## 2. Real Property at 1022 Myrick Avenue, Lumberton, Mississippi.

¶21. The State also proved by a preponderance of the evidence that it was entitled to forfeiture of Lewis' real property at 1022 Myrick Avenue, Lumberton, Mississippi. Again, Mississippi law permits forfeiture of real estate when it is used to violate, or to facilitate a violation of, Mississippi's Uniform Controlled Substances laws. Here, the State proved that Lewis and his associates—specifically, Tommy Lucas and Dewanna Brewer—used this property in furtherance of Lewis' methamphetamine operation.

---

[10]We note that the statute now allows for a fine of up to $5,000,000 for a person convicted of the crime for which Lewis pled (first offense). *See* 21 U.S.C. § 841(b)(B)(viii).

10

¶22. At trial, Dewanna Brewer testified that she packaged and sold drugs for Lewis at 1022 Myrick Avenue, where she and Lucas lived. Additionally, Brewer pled guilty to possession of methamphetamine that she acquired from Lewis. Furthermore, Lewis and Lucas were indicted together and pled guilty to the same crime in federal court. Like the analysis above, Lewis and his associates used this property to facilitate the sale, packaging, and distribution of methamphetamine. Because the State proved that Brewer and Lucas committed criminal conduct on this property in furtherance of Lewis' methamphetamine operation, we find that the State proved the required nexus between the property and the offense.

¶23. Continuing with the ***Charter Arms*** analysis, both Brewer and Lucas pled guilty to possession of methamphetamine. The two worked for Lewis and assisted him in furthering his methamphetamine operation. Lewis, Brewer, and Lucas all had sufficient roles in the criminal conduct occurring at 1022 Myrick Avenue.

¶24. Lewis purchased this property by warranty deed in 1994 and again in 2004. The parcel is small, containing only two acres. LCSD investigators discovered methamphetamine inside the house but did not discover it anywhere else on the property. Still, given the rather small size of the property, it would be difficult to separate the offending property from the remainder.

¶25. Finally, the stipulated value of this property was $65,000. As mentioned above, Lewis could have been fined up to $2,000,000. As such, we find that the forfeiture did not divest Lewis of property which has a value grossly disproportionate to his crime or culpability.

11

Accordingly, we affirm the trial court's judgment as to the forfeiture of Lewis' real property at 1022 Myrick Avenue, Lumberton, Mississippi.

### 3. Cash In Safe Inside Lewis' Home.

¶26. The State also proved by a preponderance of the evidence that it was entitled to forfeiture of the cash found inside a safe in Lewis' home. Mississippi law permits forfeiture of money found in close proximity to forfeitable drug manufacturing or distributing paraphernalia. Miss. Code Ann. § 41-29-153(a)(7) (Rev. 2013). In fact, there is a presumption that such money is forfeitable, and the burden is on the claimant of the money to rebut the presumption. *Id*. Lewis failed to rebut that presumption. The safe containing $33,300 was inside Lewis' home where LCSD discovered methamphetamine. And $1,700 of the $33,300 was money that came from the CI and was used to purchase the methamphetamine from Lewis. So Lewis had commingled the CI's money with his own. In short, the State established a nexus between all the money in the safe—which is already presumed to be forfeitable—and the offense, and Lewis failed to rebut that presumption.

¶27. Because Lewis pled guilty to possession with intent to distribute five grams or more of actual methamphetamine, Lewis' role and culpability are without question. And it would be difficult to separate the offending property from the remainder, as Lewis had commingled the CI's money with the other funds that also are presumed forfeitable under the statute. Lastly, this forfeiture did not divest Lewis of property that has a value grossly disproportionate to the crime or to his culpability. The $33,300 in cash is minor when compared to the $2,000,000 fine which could have been imposed. This forfeited amount of

cash, even when combined with Lewis' forfeitable real property, is not grossly disproportionate to Lewis' crime or to his culpability. Accordingly, we affirm the trial court's judgment as to the forfeiture of the $33,300 in cash found in Lewis' safe.

> **B.      The State failed to prove by a preponderance of the evidence that it was entitled to forfeiture of the following property.**
>
> *1. Bank Accounts.*

¶28.    We find that the State did not prove by a preponderance of the evidence that it was entitled to Lewis' two bank accounts.[11]  In fact, other than general testimony about the bank accounts, the State never asked its witnesses anything about a link between the bank accounts and Lewis' criminal conduct. This Court addressed the forfeiture of bank accounts in *One (1) 1979 Ford 15V, Vin No. E14HBEE7506 v. State ex rel. Mississippi Bureau of Narcotics*, 721 So. 2d 631 (Miss. 1998). There, we reversed a forfeiture of the appellant's bank accounts even though the account balances were higher than what would be expected, given the appellant's income, because the State's witnesses failed to associate the monies in the bank accounts with criminal conduct on behalf of the appellant. *Id.* at 637.

¶29.    Like the witnesses in *One (1) 1979 Ford 15V*, none of the State's witnesses offered testimony or evidence linking the monies in Lewis' bank accounts with his criminal conduct. Lewis' reported income for 2013 amounted to $195,379; therefore, it would not have been

---

[11]The two bank accounts were at Hancock Bank in Purvis, Mississippi. The first account, containing $38,145.69, listed Warren Lewis and David Smith as the account holders at an address of 688 Tatum Camp Road, Purvis, Mississippi. The second account, containing $351.21, listed Warren Lewis and Jacqueline Breshears as the account holders at an address of 106 Arthur Lowe Road, Lumberton, Mississippi.

unreasonable or unlikely for him to have $38,469.90 split between two bank accounts.[12] Given the State's complete lack of evidence that the monies in the two bank accounts were associated with Lewis' criminal conduct, we find that the State failed to establish a nexus between the offense and the property. And because the State failed to establish a nexus, it is unnecessary to discuss the remaining *Charter Arms* factors. Accordingly, we reverse and render the trial court's judgment as to the forfeiture of the two bank accounts.

### 2. GMC Truck (2008) and Chevrolet Truck (2004).

¶30. The State did not prove by a preponderance of the evidence that it was entitled to forfeiture of Lewis' 2008 GMC truck or his 2004 Chevrolet truck. The State put forth no evidence suggesting that Lewis used either of the vehicles to transport methamphetamine. Nor did the State offer any evidence suggesting that Lewis had purchased either of the vehicles with proceeds from methamphetamine sales. And as mentioned above, Arnold testified specifically that no drugs had been found in the trucks, and that there was no evidence of drug transportation.

¶31. This Court in *One (1) 1979 Ford 15V* upheld the forfeiture of a Ford van used by the appellant to facilitate a drug deal. 721 So. 2d 631, 636 (Miss. 1998). But the appellant there had driven the van to the location where the terms of the illegal transaction were to be discussed. *Id.* There is no evidence here that Lewis used either of the vehicles to negotiate

---

[12]Lewis had stipulated his reported federal 1099 income as follows: $46,624.00 in 2008; $66,112 in 2009; $54,086 in 2010; $61,351 in 2011; $36,105 in 2012; and $195,379 in 2013. Lewis' income increased greatly in 2013 due to a $145,605 payout from a life insurance policy.

14

the terms of the illegal transaction. In fact, Lewis did not have to drive anywhere because the transaction with the CI took place at his residence.

¶32. In short, the State produced no evidence suggesting that Lewis (1) purchased the vehicles with drug proceeds, (2) used the vehicles to transport drugs, or (3) drove the vehicles to a specific location to negotiate the terms of an illegal drug transaction. We therefore reverse and render the trial court's judgement as to the forfeiture of both the 2008 GMC truck and the 2004 Chevrolet truck.

### 3. Cash in the Safety Deposit Box.

¶33. The State did not prove by a preponderance of the evidence that it was entitled to the cash in Lewis' safety deposit box.[13] While the State elicited testimony regarding the safety deposit box and the process by which law enforcement gained access to its contents, it never alleged—much less offered any proof—that the $20,720 in cash was associated with Lewis' criminal conduct. In short, the State offered no evidence or testimony linking the cash found in the safety deposit box to Lewis' criminal conduct. We therefore reverse and render the trial court's judgment as to the forfeiture of the cash in Lewis' safety deposit box.

### 4. John Deere 450 E Bulldozer and John Deere 450 J Bulldozer.

¶34. The State did not prove by a preponderance of the evidence that it was entitled to forfeiture of Lewis' two John Deere bulldozers. Mississippi law allows for forfeiture of

---

[13]The safety deposit box at Hancock Bank also contained a Smith and Wesson revolver, but as aforementioned, Lewis did not contest the State's seizure of the firearms.

"conveyances"[14] which are used or intended for use to violate Mississippi's Uniform Controlled Substances laws. Miss. Code Ann. § 41-29-153 (a)(4) (Rev. 2013). At trial, LCSD narcotics investigator Garner testified that he had no evidence or personal knowledge of the bulldozers being used in furtherance of drug dealing on Lewis' property.

¶35. Furthermore, LCSD deputies and investigators did not discover any drugs on Lewis' property in holes that could have been dug by bulldozers. And while LCSD received firsthand information from the CI that Lewis had buried ammunition cans containing methamphetamine on his property, the CI did not say whether Lewis had used the bulldozers to do so. In fact, the second search warrant stated that the first ammunition can was buried approximately ten to fourteen inches deep in the ground. And similar to the GMC and Chevrolet trucks discussed above, the State never alleged that Lewis purchased the two bulldozers with proceeds from drug transactions. We therefore reverse and render the trial court's judgment as to the forfeiture of the John Deere 450 E bulldozer and John Deere 450 J bulldozer.

**5. _Red Honda ATV and Yellow Honda ATV_**.

¶36. The State did not prove by a preponderance of the evidence that it was entitled to forfeiture of Lewis' two Honda ATVs. Again, Mississippi law permits forfeiture of conveyances which are used or intended for use to violate Mississippi's Uniform Controlled

___

[14]Section 41-29-153 (a)(4) provides that the following are subject to forfeiture: "All _conveyances, including aircraft, vehicles or vessels_, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of property described in paragraph (1) or (2) of this subsection. Miss. Code Ann. § 41-29-153 (a)(4) (Rev. 2013) (emphasis added).

Substances laws. Miss. Code Ann. § 41-29-153 (a)(4) (Rev. 2013). Still, for the forfeiture of such property to be lawful, the State must show the existence of a nexus between the property and the offense.

¶37. While the two ATVs were discussed briefly at trial, the State did not offer any evidence that Lewis used the ATVs in furtherance of his criminal conduct. Like the trucks and bulldozers, the State did not allege that Lewis purchased the ATVs with proceeds from drug transactions. Nor did the State offer any evidence that Lewis used the ATVs to transport drugs from one location to another. We therefore reverse and render the trial court's judgment as to the forfeiture of the two Honda ATVs.

### 6. *Seven Parcels of Real Property in Lamar County, Mississippi.*

¶38. Finally, the State did not prove by a preponderance of the evidence that it was entitled to forfeiture of Lewis' seven remaining parcels of real property in Lamar County, Mississippi. Under Mississippi law, real property may be forfeited when used to facilitate a violation of Mississippi's Uniform Controlled Substances laws. Miss. Code Ann. § 41-29-153 (a)(7) (Rev. 2013).

¶39. Here, the State failed to prove that Lewis used or intended to use the following seven separate parcels of real property in violation of Mississippi's Uniform Controlled Substances laws:

(1) Parcel No. 077H-25-001; PPIN 16884; Warranty Deed dated 3/21/1994,

(2) Parcel No. 077G-25-001; PPIN 16883; Warranty Deed dated 3/21/1994,

(3) Parcel No. 077J-26-001; PPIN 16885; Warranty Deed dated 3/21/1994,

17

(4) Parcel No. 077H-25-002; PPIN 4061; Warranty Deed dated 7/8/1994,

(5) Parcel No. 077H-25-003; PPIN 4075; Warranty Deed dated 7/8/1994,

(6) Parcel No. 077I-25-007; PPIN 18834; Warranty Deed dated 7/8/1994, and

(7) Parcel No. 121-01-006; PPIN 28240; Warranty Deed dated 3/7/2007.

¶40. The State alleged that Lewis' methamphetamine operation commenced sometime in 2011. But based on the stipulation regarding Lewis' ownership of the real property, it is evident that Lewis did not purchase any real property in 2011 or any time thereafter. There was no evidence that Lewis invested any proceeds from his drug transactions into these tracts of land. Additionally, the State offered no evidence—only mere suggestion—that Lewis used the seven parcels of real property to store methamphetamine or to facilitate drug transactions. So the State again failed to establish any nexus between this real property and the offense.

¶41. And while not necessary to reach our ultimate conclusion, we note also that the third element of the ***Charter Arms*** test requires us to examine "the possibility of separating the offending property from the remainder." ***One Charter Arms***, 721 So. 2d at 625. This case involves nine separate and distinct parcels of real property. Lewis' counsel specifically questioned LCSD investigator Arnold about each parcel of real property owned by Lewis, and the only parcels where LCSD discovered methamphetamine were the parcels at 1106 Little Black Creek Road and 1022 Myrick Avenue. Because Lewis purchased the other parcels of real property on various dates and by separate deeds, we find that the seven non-offending parcels of real property are easily separated from the offending property where

18

LCSD discovered methamphetamine. For these reasons, we reverse and render the trial court's judgment as to the forfeiture of the remaining seven parcels of real property located in Lamar County, Mississippi.

**CONCLUSION**

¶42. Mississippi law requires a nexus between the offense and the property in order to render the property forfeitable. Here, the State failed to establish the required nexus between some of Lewis' property and his criminal conduct. We therefore reverse and render the trial court's judgment as to the forfeiture of: (1) the two bank accounts; (2) the GMC truck and Chevrolet truck; (3) the cash in Lewis' safety deposit box; (4) the John Deere bulldozers; (5) the Honda ATVs; and (6) the seven parcels of real property described above. But we affirm the trial court's judgment as to the forfeiture of (1) Lewis' real property at 1106 Little Black Creek Road, Lumberton, Mississippi; (2) Lewis' real property at 1022 Myrick Avenue, Lumberton, Mississippi; and (3) the cash found in the safe inside Lewis' home. We therefore affirm in part and reverse and render in part.

¶43. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**